Affirmed and Opinion filed January 20, 2004









Affirmed and Opinion filed January 20, 2004.                         

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00368-CR

____________

 

PATRICK LEE COLLINS, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 263rd
District Court

Harris County, Texas

Trial Court Cause No. 900,768

 



 

O P I N I O N

Appellant, Patrick Lee Collins, was convicted by a jury of
aggravated robbery and sentenced to twenty-five years= incarceration in the Texas
Department of Criminal Justice, Institutional Division.  In his sole issue on appeal, appellant claims
the evidence is factually insufficient to support his conviction.  We affirm.








On December 29, 2001, the complainant, Don Perry, and his
friend, Delvin Francis, were driving from Louisiana
to Houston when Perry was stopped in Woodville, Texas for speeding.  Perry was subsequently arrested for driving
while intoxicated and spent the night in jail. 
Francis called a friend to pick him up and drive him back to
Houston.  When Perry was returning to
Houston the following day, a friend named Tavarus
called him several times stating that he wanted to come over to Perry=s apartment; although Perry
said he was tired, Tavarus insisted.  Perry arrived home around 5:30 p.m., and Tavarus and his girlfriend, Kim Reed, arrived a few minutes
later.  

Tavarus and Reed were suppose to bring
a six-pack of beer, but when they arrived, they each had only one beer.  Tavarus went
outside to get the rest of the beer and as he was coming back inside, two men
shoved their way into the apartment behind him. 
The first man, who was carrying a Tech 9 or Mack 10 gun, hit Perry in
the head with the gun and threw him on the floor.  Both men beat him with Asomething, like padded leather
gloves.@  Perry was bound with duct tape.  According to Perry, the first man was large,
wearing a dark colored Aski cap or cut out cap or
something and skull cap with the eyes cut out,@ and carrying the gun.  Perry only caught only a quick glimpse of the
second man because the first man was coming at him.  

Perry testified that he recognized the voice of the second
man as belonging to appellant.  Perry
knew appellant through another defendant, Dexter Jackson, whose voice he also
recognized.  According to Perry,
appellant said to him, AYou got my friend locked
up.  You are going to pay for this here.@  The larger man picked Perry up Alike a rag doll@ and beat his head against the
computer desk.  At some point, Perry
heard a knock at the door.  








Delvin Francis testified that when he
arrived at Perry=s apartment, he knocked on the
door.  When no one answered, he knocked
again.  The Adoor [was] snatched open@ by a man wearing something
over his headCAsome thin material that you
could see through when you put it over your head.@  Francis could see the man=s profile, mouth, and
eyes.  Francis, who is familiar with guns
from his experience in the military, testified that man had a Tech 9 gun.  When Francis said he must be in the wrong
place, the man said, ANo, you ain=t, come on in.@  When he entered the apartment, Francis saw
Perry on the floor, bleeding and Aswelled up around the head.@  Francis also observed a man and a woman
sitting on the couch; they were Atied a little bit but they didn=t have nothing over their face.@  Another larger man told Francis, AOld man, . . . Just be
cool.  It will all be over in a little
bit.  This ain=t about you.@  The man then bound Francis with duct tape,
put him on the ground, and covered his head with a pillow.  

Even with the pillow covering his head, Francis could still
see through a crack.  Francis observed
Perry being carried into the bathroom by one of the intruders.  Francis could also see three individualsCtwo of them were packing up
things from Perry=s apartment while the third was
in the bathroom with Perry.  Francis was
able to free himself from the duct tape, but Tavarus
said, AOld man, you get loose.@  Francis testified that appellant and the
larger man then came back into the living room. 
Appellant pointed the gun at Francis while the larger man tied him up
again, took his billfold, checkbook, and car keys, and carried him into the
other bathroom, where he placed Francis in the tub.  

Perry testified that he could hear Francis being bound with
tape.  After that, someone carried Perry
into one of the bathrooms, dropped him in the bathtub, and piled blankets and
pillows on top of him.  Perry could hear
a third voice.  The perpetrators would periodically
come into the bathroom and beat Perry until he told them where he had hidden
his money.  Perry heard them leave in his
pickup truck after they found the money. 
Perry broke free by tearing the tape with his teeth and ran into the
living room.  Perry noticed Tavarus and Reed sitting on the couch; Reed had tape around
her ankle, but Tavarus did not have any tape on
him.  Perry found Francis laying in the
tub in the other bathroom, with his hands taped behind his back.  After freeing Francis, Perry called the
police. 








Deputy Phillip Lillibridge of the
Harris County Sheriff=s Department received a call
for a home invasion robbery at an apartment complex.  When he arrived, Perry and three other people
were there; the apartment appeared to have been ransacked.  Deputy Lillibridge
observed that Perry, whose head was bleeding, was visibly shaken and
distraught, i.e., Ahow anybody would be that was
beaten and robbed at gunpoint,@ and summoned the paramedics.  Perry told him that among other items, his
big screen TV, $4,000 in cash, and his pickup truck were missing.  Deputy Lillibridge
called in the license plate number of the missing pickup truck and requested
crime scene investigators.  

When Deputy Lillibridge first
responded, there was an indication over the radio that three males were
involved in the robbery.  Deputy Lillibridge testified that Perry told him there were two
masked gunmen and that he thought he might know who was involved in the robbery
and gave him the name of a person with whom he had had past dealings.  The only description Perry gave Deputy Lillibridge of any intruder was for that of a large black
male.  Perry did not mention anything to
Deputy Lillibridge about whether he recognized the
intruders= voices.  Nor did Perry relate anything about the
demeanor of Tavarus and Reed. 

On January 1, 2002, Perry called the Sheriff=s Department.  Deputy Michael Parsons met with Perry, who
wanted to report some things about the robbery that he had since
remembered.  Deputy Parsons testified
that Perry told him that he thought the perpetrators were Tavarus= friends.  Perry also told Deputy Parsons that he
recognized the voice of one of the suspects whose name he thought was ABrian@ and who went by the street
name ACoony.@  Perry=s pickup truck was recovered on
January 1, 2002, when a Harris County deputy constable spotted it sitting in an
abandoned lot. 

Detective T.O. Keen with the Harris County Sheriff=s Department began working on
this case on January 3, 2002.  At that
time, Perry told Detective Keen that he thought he had been set up by a person
who was present during the robbery. 
Detective Keen further interviewed Perry on January 8.  Detective Keen testified that Perry
recognized one of the voices as belonging to someone whose street name was ACoony@; Perry thought ACoony=s@ real name was Byram Jackson, but he was not sure.  Detective Keen determined that Byram Jackson was not a correct name and was not able to
develop a suspect from that name. 








Detective
Keen, however, received a Crime Stoppers tip from the Houston Police Department
regarding appellant=s involvement in the
robbery.  After receiving the Crime
Stoppers tip, Detective Keen put together a photospread,
which included appellant=s photograph, and showed it to
Perry on January 28, 2002.  Detective
Keen testified that Perry identified appellant

. . . as a person that he felt
was involved with the people in the robbery itself.  Stated he did not see him during the
robbery.  His eyes were taped shut.  He knew there was [sic] two and he felt a
third person [was] involved.  He thought
he was going to be a person that was going to be actually involved in the
robbery.  

Detective Keen also showed the photospread
to Francis, who identified appellant as one of the individuals involved in the
robbery.  Francis told Perry that because
of the pantyhose pulled over appellant=s face, he would have to see
appellant in person before he could be 100 percent sure of his involvement in
the robbery, Abut [Francis] was very strong
in the identification.@  Detective Keen testified that based on this
information, he was able to obtain an arrest warrant for appellant.  After appellant was in custody, Detective
Keen conducted a live lineup on February 8, 2002.  Francis identified appellant as the first
person who grabbed him when the door was opened.  

Detective Keen recovered Perry=s big screen TV.  Ramon Conner, the nephew of Daphne Jackson
who is appellant=s common law wife, had
knowledge of the TV being brought to appellant=s residence on the night of the
robbery.  Conner testified that Daphne
was angry about the television being in the house.  Appellant asked Conner to help him move the
television to a neighbor=s house.  Appellant also asked Conner if he could Aget rid of it.@  Conner sold the television to a friend the
next day.  Conner subsequently heard that
Detective Keen had been looking for him. 
Conner met with Detective Keen and told him what had occurred with
regard to the television.  After his
arrest, appellant told Connner not to get the
television back because it Awas evidence.@  Conner testified that at the time he sold the
television, he did not know it was stolen or how it came to be at Daphne=s house.

In the only issue raised in this appeal, appellant
challenges the factual sufficiency of the evidence supporting his
conviction.  Appellant primarily argues
that the State=s identification evidence was
fabricated.








When reviewing claims of factual insufficiency, it is our
duty to examine the jury=s weighing of the
evidence.  Clewis
v. State, 922 S.W.2d 126, 133, 134 (Tex. Crim.
App. 1996).  There are two ways in which
evidence can be factually insufficient: 
(1) the evidence is so weak as to be clearly wrong and manifestly
unjust, or (2) the finding of a vital fact is so contrary to the great weight
and preponderance of the evidence as to be clearly wrong.  Zuliani
v. State, 97 S.W.3d 589, 593 (Tex. Crim. App.
2003).  Determining which standard
applies depends upon whether the complaining party had the burden of proof at
trial.  Id.  If the complaining party did not have the
burden of proof, then the Amanifestly unjust@ standard applies.  Id. 
On the other hand, if the complaining party had the burden of proof,
then the Aagainst the great weight and
preponderance@ standard applies.  Id. 
Under the Texas Court of Criminal Appeals= modified approach, if the defendant
challenges the factual sufficiency of the elements of the offense, even though
the State had the burden of proof, we must review the evidence using both
standards.  Id.  Thus, when reviewing factual sufficiency
challenges, we must determine Awhether a neutral review of all
of the evidence, both for and against the finding, demonstrates that the proof
of guilt is so obviously weak as to undermine confidence in the jury=s determination, or the proof
of guilt, although adequate if taken alone, is greatly outweighed by contrary
proof.@  Johnson v. State, 23 S.W.3d 1, 11
(Tex. Crim. App. 2000).

Appellant
argues that because the accounts Perry and Francis gave to Deputy Lillibridge immediately following the robbery and to
Detective Keen during his investigation are different from the accounts to
which they testified at trial, it is evident that Perry and Francis fabricated
their trial testimony identifying him as being at the scene of the
robbery.  Appellant complains that
although Perry never mentioned the following matters to Deputy Lillibridge or Detective Keen, he nonetheless testified as
to each of the following points:

!       that one of the perpetrators was carrying a Tech 9 or Mack 10
gun;  

!       that appellant said, AYou got my friend locked
up.  You are going to pay for this here@; 








!       that Perry identified three individuals, including appellant,
to the Sheriff=s Department a couple of days
after the robbery even though appellant=s name surfaced as a result of
a Crime Stoppers tip and Perry was only able to identify one person by the
street name Coony; 

!       that Perry recognized appellant=s voice during the robbery, but
only identified appellant in the photospread as an
individual who might be involved with those who committed the robbery; and 

!       that Perry thought he had been set up by someone who was
present during the robbery.

Perry testified that when he talked to the deputy
immediately after the robbery he did not mention appellant or the other
intruders because he was confused after having been beaten in the head.  Perry stated that Aat the time [he] was assaulted
[his] head was busted and it was swollen all up like a big tomato about to
burst and [he] have [sic] major headaches.@  Deputy Lillibridge
described Perry=s demeanor after the robbery as
Ahow anybody would be that was
beaten and robbed at gunpoint.@  Two days later, Perry called the Sheriff=s Department when he had put
things together.  Perry testified that he
did not see how many intruders there were, but he was certain appellant was
involved in the robbery because he recognized appellant=s voice.  Detective Keen testified that Perry told him
that he thought he had been set up by an individual who was in his apartment
during the robbery.  Detective Keen also
explained that he met with Perry again after his initial conversation with him
because Perry was not able to think clearly after the robbery and was able to
remember more details of the robbery. 
The lack of details in his initial report to Deputy Lillibridge
and to Detective Keen is evidence of Perry=s state of mind immediately
following the robbery.[1]  

Appellant
also complains that Francis testified about matters without ever having
mentioned those matters to the investigating deputies:








!       that the man who Asnatched open@ the door was wearing something
like pantihose over his head and that he could see
the man=s profile; 

!       that the weapon was a Tech 9; 

!       that he could see Perry=s belongings being taken out of
the apartment and that he could see three people in the apartment; and 

!       that he suspected Tavarus and Reed
were involved in the robbery.  

Francis testified that his original statement mentions only
two men, not three, because his statement includes only what happened when he
first arrived at Perry=s apartment.  Francis, however, identified appellant as the
person who grabbed him and brought him inside the apartment.  

Appellant further argues the physical evidence found in his
house does not support Perry=s and Francis= trial testimony because no pantihose mask or large caliber guns were recovered.  Instead, appellant contends the only physical
evidence linking him to the robbery was Ramon Conner=s testimony that Perry=s television was at appellant=s house after the robbery.  Appellant contends that, at best, this puts
him in possession of a stolen television, but it does not put him at the scene
of the robbery.  However, Conner
testified that appellant told him to get rid of the television because it Awas evidence.@  The presence of Perry=s television in appellant=s house is evidence connecting
him to the robbery.  

Appellant contends A[t]he physical evidence
recovered from Mr. Perry=s stolen pickup absolves [him]
from guilt.@  Deputy Linda Haley of the Sheriff=s Department=s latent lab testified that
although some prints were recovered from the vehicle, none were identified as
belonging to appellant.  The fact that
appellant=s prints were not found in the
vehicle could be consistent with appellant either having left in a different vehicle
or wearing gloves.  The absence of
fingerprints alone does not exonerate appellant from any guilt in having
participated in the robbery.  








Appellant finally argues Francis= pre-trial identification is
suspect because his initial identification from the photospread
was only tentative and the identification from the live lineup is suspect
because appellant was the only person common to the photospread
and live lineup.  Francis, however,
picked appellant out of the photospread, but said he
needed a live lineup before he could be 100 percent sure that appellant was
involved in the robbery.  Detective Keen
also testified that Francis Awas very strong in the identification.@

The jury is the sole judge of the facts, the credibility of
the witnesses, and the weight to be given the evidence.  Beckham v. State, 29 S.W.3d 148, 152
(Tex. App.CHouston [14th Dist.] 2000, pet.
ref=d).  Therefore, the jury may believe or disbelieve
all or part of any witness=s testimony.  Jones v. State, 984 S.W.2d 254, 258
(Tex. Crim. App. 1998).  Moreover, reconciliation of any conflicts in
the evidence falls within the exclusive province of the jury.  Heiselbetz
v. State, 906 S.W.2d 500, 504 (Tex. Crim. App.
1995).  

The jury was free to reconcile any conflicts in Perry=s and Francis= testimony and to believe
whatever version of events transpired during the robbery.  At a minimum, however, appellant was
identified as one of the intruders at Perry=s apartment and was seen in
possession of an item taken from Perry=s apartment immediately after
the robbery.  The evidence is not so weak
as to undermine confidence in the jury=s verdict.  Appellant=s sole issue is overruled and
the judgment of the trial court is affirmed. 


 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed January 20, 2004.

Panel
consists of Justices Yates, Hudson, and Fowler.

Do Not
Publish C Tex. R. App. P. 47.2(b).











[1]  With respect
to his claim that Deputy Lillibridge testified that
he asked Perry and Francis if they thought Tavarus= and Reed=s
demeanor was suspicious, appellant has mistaken defense counsel=s question for Deputy Lillibridge=s testimony. 
Appellant=s trial counsel asked Deputy Lillibridge,
ADid he [Perry] tell you anything about the behavior,
the demeanor of the young male and female that was there that he thought was
suspicious in any way?@  Deputy Lillibridge replied, ANo, sir.@